3-17-0-8-2-8. People of the State of Illinois, F. Lee by Richard Letters v. Brent Saltzman. Appellant by Stephen Richards. Good morning, Your Honors. My name is Stephen Richards, and I represent the appellant in this case, Brent Saltzman. As Your Honors are aware, by reading the briefs, this was a motion to leave for leave to file successive petition on different grounds. And it involved the conviction of Mr. Saltzman for first-degree murder, a sentence of 79 years for the first-degree murder of Jack Waver, who was the treasurer of Will County at the time and was his stepfather. Now, just as a point, and I've mentioned this to counsel, Brent Saltzman is currently incarcerated, but he's been moved to Elgin Mental Health Center by the IDOC, something they did on their own. I didn't intervene or try to get that done. But it does illustrate the deterioration of Mr. Saltzman's condition and the fact that he did have very, very severe mental problems, which would support a defense of insanity. Now, I'd like to start with Issue 3. Well, what time frame are we talking about? Now? Or do we go back to then? Well, Your Honor, I think that what Dr. Rome testified to, she looked at all the records. She examined him thoroughly. She saw everything that was in the file, including the previous evaluations. And it was her conclusion, based on her evaluation, plus reviewing all the records and everything else, that in fact at the time of the account, he was unable to appreciate the wrongfulness of his conduct. It was therefore insane. Does that conflict with the psychiatric evaluation at the time of sentencing? Well, there is two different evaluations at the time of sentencing. One by Dr. Wahlstrom said that he had major problems, and those contributed to his condition. But he determined at that time that he was not insane. Now, there was a second opinion by a second doctor who had been hired by Attorney Levin. That doctor had- And what time frame was that? That was during the second trial. Okay. The first trial. The first opinion was when? I believe the first opinion was introduced at the time of the sentencing. Part of what happened here, as Your Honors are aware, this is a sort of complicated situation, because he was first found guilty of the battery. Mr. Waver hadn't died. No insanity defense was raised at the time of that first trial, but it was reversed on grounds of, you know, not giving him the right to move a judge. At the second trial, there were some evaluations done, partially because when he came back, Mr. Saltzman was found unfit, and he was actually sent, I believe it was to Chester, it might have been Elgin, to get him fit. Eventually they got him fit. The second opinion that came up during the second trial was an opinion by someone that Attorney Levin hired, who said, did not give any opinion on insanity one way or another, but he said that he couldn't form the intent. That's a slightly bizarre opinion, I think, and I don't think it was necessarily admissible. There was an oral motion made to put that in, and that was the end of it, in terms of the examination of insanity. Let me, though, go to what the State says, and I think this is the first issue Your Honors have to address. Their position is that a defense of insanity is not innocence. That's what they say. And I have two responses to that. There may actually be more, maybe three or four. But the first response is I do have a case, People v. Moore, from 1972, where the appellate court said where there's newly discovered evidence of insanity, that's newly discovered evidence of innocence. And the standard for newly discovered evidence doesn't change between a motion for new trial, a successive petition, or an original petition. Same thing. I think the other thing I would say is I did do extensive research on this, and I wasn't able to find any other case, either in Illinois or in other jurisdictions. I think the State couldn't find anything, either, because they don't cite anything. They don't cite they just say insanity can't be factual innocence. They don't cite any cases which say that. Under the law of Illinois, well, first of all, let's look more broadly. Illinois does provide for affirmative defenses. Would one say that where there's newly discovered evidence that the defendant acted in self-defense and was exonerated, that that was not newly discovered evidence because, after all, the defendant actually did commit some act, might be morally blameworthy, but was innocent? Would one say that as to any other affirmative defense? Would one say that as to insanity when, as Your Honors know, you have to prove insanity by clear and convincing evidence? And the legislature has determined that a person in sane is not a criminal, is not guilty. Now, there are certain civil consequences which flow from being found not guilty by reason of insanity, having to do with future dangerousness, protection of the community, et cetera. But all those things have nothing to do with factual innocence. If you can allege insanity, if you can prove insanity by clear and convincing evidence, it would be our view that you're innocent, and when there's newly discovered evidence that you are innocent, you are entitled to some sort of hearing or proceeding. I will also say that in terms of what the State is arguing, there's two standards that are clear or may be an issue. One is the issue of whether this is a de novo review or an abusive discretion review. Our position is it's de novo. The Illinois Supreme Court has kind of waffled on that a little bit, but I think the bulk of authority aims towards de novo. Second, it's when the- Do you prevail under either standard? Yes. Okay. But I think de novo is cleaner, clearer, and more-is better fitted to this kind of determination. The other thing that this Court has said is that it's a colorable claim of innocence. Now, the standard of colorable we don't believe is an extremely high standard to meet. Colorable means, you know, we can go forward with it. Many of the complaints that the government or the State- There has to be more than that. Otherwise, it's just, you know, a complaint. Sure. Well, you have to show it's a colorable claim of newly discovered evidence, and there are standards for that, which, as you know, non-cumulative, material, newly discovered, could not have been discovered by exercise of due diligence. Now, the State in its brief did not maintain that this could have been found by the exercise of due diligence. I think that is a question that might be addressed on second-stage proceedings, particularly because we're also bringing in ineffective assistance of counsel. So we pled in the alternative, and there's obviously a choice between those two ways of addressing this claim. But- Counsel, may I interrupt you just for a moment? Sure. And ask you to go back to the standard of review. Did the trial judge help us by stating whether she was deciding it as a question of law or a question of fact? In other words, did she rule whether insanity could be newly discovered evidence? Your Honor, to be honest with you, she wrote written opinion, and I can't remember what she said exactly, but I believe my memory is the issue- by the State when they moved to dismiss. And even though this was a motion for leave, the State was granted leave to weigh in and weighed in, so there's actually a full briefing below. If you don't know what the ruling was, then I will get the record, and I don't want to chew up any more of your time. I welcome interruptions of my time, and I appreciate the question, which is a good one. And if Your Honor-I know you're on a look at the record, but I'm going to look at it myself, and if you wouldn't mind me sending a letter to the Court just to clarify that point, I can do that afterwards. We'll decide that as a panel whether we need any additional input, but thank you. But I don't need to know if it does make a difference. Well, I don't think it does because the colorable standard claim, or the colorable standard, I believe, in the case law indicates it means that the Court is not supposed to look at issues of credibility, which is generally the case in the second stage also. To look at questions of credibility, you have to really be in the third stage. And, for example, in the third stage, if Dr. Rome testified, she could be cross-examined on how reliable this opinion is because it came years later, and she could give more input as to the scientific basis of her opinion. But it is a colorable claim at this point. The State thinks it's ridiculous, but I don't think they have the psychiatric expertise, nor do I, to reach that conclusion. So a colorable claim really is an averment, is what you're saying, right? It's not really a what? An averment, nothing more than an averment. The avers that... You have to have facts supporting it. Okay. In this particular case, we have Dr. Rome's opinion. That's more than an averment. We have the affidavit of Brent Saltzman's father. That's more than an averment. We have what Brent Saltzman's father learned from the psychologist at Dixon who said, and this is important because we couldn't get letters or affidavits from them because they said they won't do it. They'll only do it once we get it to court. So those are facts supporting newly discovered evidence. I would agree that if my petition just said there's newly discovered evidence of insanity and left it at that, that would be a mere averment which should be dismissed as not a colorable claim. But we provided more. I think the issues, as I said, I think once we get into the second stage, you'll be easier to sort out by possibly by discovery in terms of what the attorneys knew and whether they were ineffective for not investigating insanity earlier or whether it wouldn't be clear until later when his condition had deteriorated what the full extent of his problem was, which is what we think happened. I only will address briefly some of the other issues. Now, as to the claim under People v. Rice, which is a court's confession issue, the state maintains that there is no coercion because Saltzman testified at the hearing that he made a statement because he wanted to be let go and thought he'd be released. But he also testified, and this was unrebutted, that he was severely beaten by the guards, and there was some corroborating evidence in terms of people seeing blood later and things like that. Even assuming he said that he gave a statement because he hoped to be released, that does not conflict with a coercion motion based upon beating. I think, as Your Honors are aware, I mean, beating of that sort is, you know, unless done by self-defense, by the guards or something, is almost, particularly where there's evidence of injury, is reason to suppress a confession. Now- I thought that was blood. I'm sorry, what? I thought that was blood. I'm sorry? Let me just- I thought that was the victim's blood. I don't think there was any evidence that it was the victim's blood. Officer Bradley testified that he transported Brent Saltzman from jail to the Eagle Building, so he's in the jail first. He admitted that he noticed there was blood on his clothing. Once they arrived at the Eagle Building but not before. So if he had blood on his clothes after he got to the Eagle Building and it wasn't noticed or it wasn't recorded by anybody when he got to the jail, I think it's a reasonable inference that his testimony that he was beaten is accurate. So I think there was a coercion claim. Now, this claim has always failed in the context of this case whenever it's been raised because the appellate courts have said, who cares, his statement is consistent with the rest of the evidence, and even without a statement he would have been convicted. But the point about People v. Rice is it establishes a new standard which didn't exist before 2012, which is that courts will grant a new trial if a statement is coerced by physical coercion. Not anything involving Miranda warnings or promises or even threats, but physical coercion. This was the claim here. Your Honor, obviously this has been a dismal journey for my client and for everyone else involved, but I think justice requires that the case move on to the second stage and that we litigate the issues fully and fairly. Thank you. Thank you, Mr. Richards. Mr. Leonard. May it please the court, counsel? I'll begin with Justice Wright's question. I don't recall either what the trial judge said. It's easy to find. Okay, yes. And then with respect to Justice Holdridge's questions regarding the standard of review, in People v. Edwards, the Supreme Court had the opportunity to determine the standard of review, but they punted. They said we're not going to determine at this time under either standard that case failed, and that's my argument here, that either standard you use, this case fails. However, the defense counsel never brought up the glaring question about whether this issue was forfeited. The defendant argued ineffective assistance of trial counsel for not bringing in insanity defense. Well, the first trial was in Melody because this court reversed and remanded, so it doesn't matter what the first trial counsel did, George Lynch. Ira, the second attorney who defended the defendant in his second trial, they bring up the argument that he was ineffective because he did not raise an insanity defense. However, the defendant lost in that case. It went up to this court, and the ineffective assistance was not raised, so that issue has been forfeited. The defendant filed the first post-conviction petition. He never raised that issue in that petition, so that issue has been forfeited. Now the defendant is trying to raise an issue that has been forfeited twice in a successive post-conviction petition, so I think it's clear that this argument has been forfeited. Even if the argument was not forfeited, the defendant has not shown newly discovered evidence. The defendant would like us to believe that a psychologist can look at a patient 13 years after he's been convicted and see this. The report stated that it was revealed in a post-psychotic episode that the reason that he attacked the victim here was because he had been sexually molested. Well, this is 13 years later. How can that come back to the point in time where you have to prove insanity at the time of the crime? Furthermore, if he was in a psychotic episode, how could that be reliable information? Apparently this defendant has progressed downward-spiling deterioration. It seems like he's worse now than he was at the time of the first trial or the second trial. Dr. Wahlstrom's opinion was right after he was first convicted at the first trial and before sentencing. He was the closest one in time to either trial. His opinion was that the defendant was not insane at the time of the offense because he knew what he was doing. Because after the offense, he fled. Then he came back and he said he wanted to apologize and check how the victim was doing. Well, that shows consciousness of what he knew he was doing and shows consciousness of guilt. No, it is our position that evidence of actual innocence must support total vindication or exoneration and not merely present a reasonable doubt. That case is People v. Loftin. I think it's an Illinois Supreme Court case. I didn't write down the site, but I cited that in my brief. Not guilty by reason of insanity is not actual innocence. In a claim for successive post-conviction petition, you have to show actual innocence, that you're innocent of the crime. If you're found not guilty by insanity, that does not mean that you're innocent of the crime. You're just not responsible and you're not guilty. We believe that that's inconsistent with Loftin. With respect to the last issue, the defendant's confession was the result of physical coercion. Well, we don't have any evidence in the record that the defendant was coerced into giving this statement. Even assuming that the trial, that the defendant was correct, that he was roughed up by the guards or the inmates, well, that wasn't at the time of the confession. It has to be coerced at the time of the confession. And he specifically testified that the only reason he confessed, because he thought that they would let him go free, that rebuts anything in the defendant's successive post-conviction petition. And the Rice case, that never established the blanket rule that the defendant need only state that his confession was physically coerced to overcome the burden of the cause of prejudice test. However, we don't have the cause of prejudice test here. The defendant raised only the actual innocence claim, two different burdens. I don't believe that Rice applies to this case due to those facts. I think I've covered everything, if there's no questions. Would you review the Loftin? Loftin was a First District appellate decision, not a Supreme Court decision. Okay, well, thank you. So, give me your argument again based on Loftin. Loftin, well, you don't have to follow Loftin since it was a different district. But I believe Loftin is well reasoned, and I believe that actual innocence means actual innocence. It doesn't mean not guilty by reason of insanity. But I would ask that you follow Loftin and find that that is the case. Kind of a crazy line to draw, isn't it? That not guilty because of insanity is. It's logical that not guilty by reason of insanity is not actual innocence. Your argument is because a homicide was committed by the defendant. Yes, he's still guilty of the homicide. But because of the law, the law says that we're not going to hold you responsible even though you're actually guilty. That's not actual innocence contemplated by the statute. The case law, at least Loftin. So in this instance, actual innocence would be you discovered evidence that you were not the one who caused the homicide. Correct. That you did not do it. Not this. So we're not talking about mental state then, right? Right. And insanity, you claim, goes only to mental state? Yes. You have to show that you are innocent, meaning you didn't commit the crime. Someone else committed the crime. And under this scenario, our argument is that that's not actual innocence, not guilty by reason of insanity. Because it only goes to? The commission of the crime. And you're released from your crime because of your mental state. And I believe that's what Loftin says, and I guess you follow Loftin. And if you don't have any questions, I'd ask that you affirm the trial court's denial of the successive post-conviction petition. Now here's my question. We're reviewing the denial of the request to file leave, or to. We're not reviewing substantively the ruling on the post-conviction petition. I think you stated that's what we're reviewing. We're reviewing the decision to deny leave. Yes, if I miss both. Okay. Yes, that's what I meant. Okay, all right, thank you. I'm kind of a stickler on procedure, and I just wanted to make sure I'm on the same page. Yes, if I miss both, you're correct. Thank you, Mr. Meyers. Mr. Richard? Yeah, I just have a few points. First, I just want to deal with some minor factual corrections, and then I'll get to Justice Fullridge's last discussion, which I think is critical. First of all, in terms of the beating, I'm looking from the record. Brent Saltzman stated that after he was transported to the Eagle Building, he was still terrified that he was going to be punished and kicked again. That's on 815 of the record. So I think the idea that there was no good motion to suppress because he confessed anyway. He also said he made the statements because he thought the police were going to release him and make him go home. Of course, if he'd been beaten, and, I mean, that's totally consistent, particularly given this man's mental state, which was not good at any point. In terms of whether ineffectiveness on direct appeal as to insanity should have been brought up, I don't know how. There was nothing in the record on direct appeal. There is a bigger question as to why George Lynch didn't bring it up, and we've given some reasons why we think that we have cause and prejudice there. Also, Dr. Roan was not a psychologist. She was a psychiatrist. But let me go to the question, which I think is at the heart of the case, which is Justice Holrich's question. If factual innocence means not causing a death, if that's what it means, then somebody not guilty by reason of self-defense is not factually innocent and can't bring a claim. I don't think that can be the case. As to insanity, same thing. And as we all know from law school, just because somebody does something doesn't mean they're guilty of a crime, just because they cause a bad result. You know, a policeman who shoots someone in self-defense has not committed a crime in the eyes of the law. A person who lacks the mental state because of insanity is something they must prove by clear and convincing evidence under the law is not guilty and is innocent. Innocent, I think, is just a term which means innocent, which means you're not guilty of a crime. Now, it's a factual question to what extent, you know, whether you can show that there's evidence so conclusive it would result in a different result on a retrial. But that's another question, and it's not really contested by the state. As Justice Wright pointed out, this was only the first review. This was only a question of whether there was leave to file. And for the reasons which I've given, and I believe in my brief the opinion below may be included as the judgment, so that's an easy place to find it, and it's also the record. But in any event, we ask that the judgment below be reversed, the case be remanded for second-stage proceedings. So your view is you have taken that first step to get into the ring, right? Correct. By the affidavits? Yes. And the affidavits, you arguably support that. Correct. It's a cul-de-sac claim based on affidavits, based on the opinion of a psychiatrist whose qualifications are uncontested, based upon Brent's office's affidavit, based upon his father's affidavit, and what he learned from the psychologist who wouldn't give him further information because they have to be subpoenaed. Was there a judge the first time or an expert the first time around who believed he was not guilty because of insanity? I'm sorry. The experts on the first time around, Dr. Wallstrobe said that he wasn't insane. There was one clerk who said that he was. He was not. The second one, the one liar. Why is Roan's testimony? I'm sorry? Why is Roan's testimony? New evidence. It's new evidence because she got new information from Saltzman. It's very hard to figure out the facts when you're talking about somebody who is as badly insane, or I'm using insane in a colloquial sense, as Mr. Saltzman. She was able to get that evidence. It's consistent with some of the other things in the record, such as not that he was actually being sexually assaulted. That was a fantasy. No one was sexually assaulting him. But he got the idea that he was being sexually assaulted because he saw a private part of Jack Weber, and that set him off, and that's why he lacked the substantial ability to conform his conduct to the law. And this revelation came about through a psychotic episode? Yes. That's what she testified in her affidavit. And she also, it was also consistent with what she found in the records. Now, perhaps the state is right, and they don't have an expert that says you can't rely on things said during psychotic episodes. Maybe yes, maybe no. But that's an issue for the second stage, and probably for the third stage. Is this a situation of just careless terminology, in that if you're found not guilty by a jury, it doesn't mean you're innocent, although there is sometimes a blurring of the concept of not guilty meaning innocence. Do you think this is just a situation of careless terminology, that innocence should have been substituted with the words not guilty? Absolutely. And I think you've hit the nail on the head. Because the standard of innocence being either I didn't do it or something like that, there's lots of things in between which the law recognizes as complete excuses, complete defenses. One is insanity, which is complete defense, even though it has some civil consequences. Another is self-defense, complete defense. Another is accident, complete defense. You can cause somebody's death, but if it's an accident, you're not guilty. You're colloquially innocent. If you are accused of accountability, I have a client, Anthony Johnson, who was acquitted by the appellate court on the grounds that they couldn't find evidence of his accountability. And he also got a position for surrogate innocence, proving that he wasn't accountable to the satisfaction of a Cook County judge. And the judge said in his finding, I apologize for giving you an anecdote, but maybe he did some bad things, maybe he's morally blameworthy, maybe he should have gone to the police earlier, but he's not accountable. He's innocent. So I think that factually innocent means having a legal defense. Well, the difference between the act and the mental state, isn't that what you're trying to say? Yeah, absolutely.  In other words, to be not innocent. If you committed the act, but you don't have the mental state, if it was an accident, self-defense, insanity, you're not guilty and you're innocent in colloquial terms. But it's colloquial. What? It's colloquial. To define the word innocence differently means that there's a higher standard in the realm of post-conviction petitions than there is below for a finding of not guilty. Well, this is the difference, though, if I can clarify. The difference is in the realm of post-conviction petitions, you have to show, the actual standard is you have to show so conclusive as to what would result in a not guilty. Nobody finds anybody innocent. I agree. I agree. You know, we don't even have scotch verdicts in this country. But the terminology used is evidence of actual innocence. And that doesn't coincide necessarily with not guilty. So we can debate that as a panel. I hope you will, because I think it's an issue that needs to be clarified. And as I said, the better result would be if somebody can show, you know, so conclusive that a jury would find him not guilty, then that's factual innocence for the purpose of the post-conviction petition. I hope I've said that maybe more clearly. That's the essence of your argument. I think we've gotten right to the meat on the bone. I mean, that's exactly where the argument lies. All right. Anything else? Thank you, Mr. Richards. Thank you both for your arguments today. We'll take this matter under advisement. We thank you for the written disposition. We're going to short break. We're not going to short recess.